**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

LAUREN M. DIAZ,                                  :
                                                 :     CASE NO.
        and                                      :
                                                 :
JESSICA PICHÈ,                                   :
                                                 :     JUDGE
                Plaintiffs,                      :
                                                 :     MAGISTRATE JUDGE
        v.                                       :
                                                 :
THE ACADEMY AT GRANDVIEW LLC,                    :
*dba* GODDARD SCHOOL                             :     **COMPLAINT**
    OF GRANDVIEW,                                :
                                                 :     **Jury Demand Endorsed Hereon**
                        Defendant.               :

## I.      Preliminary Statement

1.      This action seeks economic, compensatory, and punitive damages; declaratory, injunctive, and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of Title VII of the Civil Rights Act of 1964 and/or the Ohio Laws Against Discrimination, R.C. Ch. 4112, committed when Defendant terminated Plaintiffs because they opposed infliction of a hostile work environment on a coworker transitioning from female to male, even though they opposed in a responsible and non-disruptive manner employment decisions and actions they reasonably and sincerely believed were sex discriminatory, and/or Ohio's clear public policy that an at-will employee's refusal to participate in bullying an especially vulnerable coworker and thereby inflicting severe emotional distress should not motivate an employer in reaching the decision to discharge that employee.

## II.     Jurisdiction and Venue

-- 1 --

2.      Plaintiffs bring their retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., pursuant to a Charge Affidavit timely dual-filed by Plaintiff Lauren M. Diaz on December 23, 2021, and by Plaintiff Jessica Pichè on January 6, 2022, and the Equal Employment Opportunity Commission and the Ohio Civil Rights Commission have issued right-to-sue notices under 42 U.S.C. § 2000e *et seq*, and R.C. 4112.052 respectively; Plaintiffs bring their wrongful discharge claim under the Ohio common law.

3.      This Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights); and 1367 (supplemental jurisdiction).

4.      Declaratory, injunctive, and equitable relief, including reinstatement, are sought pursuant to 28 U.S.C. §§ 2201; 2202, Title VII; the Ohio Laws Against Discrimination; and the common law of the State of Ohio.

5.      Compensatory and punitive damages may be awarded under Title VII, 42 U.S.C. § 1981a; R.C. 4112.052; and the common law of the State of Ohio.

6.      Costs and attorneys' fees may be awarded pursuant to the Title VII, 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 54; and the common law of the State of Ohio.

7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because the claims arose in and around Franklin County, Ohio, where Defendant conducts its operations, Plaintiffs worked for Defendant, and all events giving rise to this action occurred.

III.    **Parties**

8.      Plaintiff Lauren M. Diaz ("Ms. Diaz") is a resident of central Ohio; graduated from Columbia University with a Bachelor of Arts Degree and held various teaching positions prior to starting with Defendant in May, 2019, as a Lead Pre-School Teacher, earning $15.25 per hour, or $31,720.00 annually, and then being promoted, on or around September 30, 2021, to Co-Director,

an at-will position with an annual salary package of approximately $42,677.00, comprised of salary, employee benefits, and bonuses; and never had any performance problems or discipline while working for Defendant before her termination.

9.      Plaintiff Jessica Pichè ("Ms. Pichè") is a resident of central Ohio; graduated from the Columbus State Community College with an Associate Degree in early Childhood Education and Development; was employed before Defendant hired her, as an infant teacher, pre-school teacher, and Center Director at the Compass School and as Director of Education at a Goddard School in Gahanna, Ohio; started working for Defendant on March 4, 2019, as Director of Education and then became Co-Director, an at-will position; annually earned approximately $45,000 plus benefits; and never had any performance problems or discipline while working for Defendant before her termination.

10.     Defendant The Academy at Grandview LLC, *dba* Goddard School of Grandview, is a domestic for-profit limited liability company registered with the Ohio Secretary of State; a franchisee of Goddard Systems, Inc., a nationwide leader in early childcare and education, with more than 560 Goddard Schools serving more than 70,000 students in 38 states; owned and actively managed by Janie Patterson ("Ms. Patterson"), along with her husband and sister; and at all times material to this Complaint had 15 or more employees and was an employer covered by Title VII of the Civil Rights Act of 1964 and the Ohio Laws Against Discrimination.

## IV.    Facts

11.     On or around December 10, 2021, Jasmine Deming, a teacher with nearly four years of experience in early childcare and education who had recently become employed by Defendant, explained to Plaintiffs that she was medically transitioning from her cisgender of female to a male

and wanted to be referred to as Rain Deming and have the pronouns he/him/his used for referring to her.

12.     Jasmine Deming explained that testosterone injections were noticeably affecting her, and she could no longer keep her transitioning secret.

13.     Plaintiffs knew from talking with Jasmine Deming and coworkers that the transitioning was emotionally stressful and the testosterone injections would likely affect her hormonal balance and physical appearance, voice, facial hair, and other conventional signs of gender.

14.     On December 4, 2021, Jasmine Deming confirmed more widely what she had been confiding in some coworkers about her transitioning, and given the close-knit workforce and grapevine, Plaintiffs were not surprised by what she told them.

15.     Believing that transgender employees were protected against discrimination and bullying and not wanting to inflict a hostile work environment on Jasmine Deming or cause her severe emotional distress, Plaintiffs agreed to her requests.

16.     Jasmine Deming also told Plaintiffs that she was reluctant to talk with Ms. Patterson because she believed Ms. Patterson identified as a conservative politically and negatively viewed the LGBTQ (Lesbian, Gay, Bisexual, Transgender, and Queer) community.

17.     Jasmine Deming feared that Ms. Patterson would react adversely to hearing about her transition.

18.     Plaintiffs agreed to broach with Ms. Patterson the transition and Jasmine Deming's name and pronouns request.

19.     Before conversing with Ms. Patterson, Plaintiffs researched how employers should treat transitioning and transgender employees and organized what they learned into a presentation to inform and advise Ms. Patterson.

20.     On December 13, 2021, Plaintiffs met with Ms. Patterson to discuss the transition.

21.     At that meeting, Ms. Patterson described her personal belief that an individual is the gender that he or she was born with and that does not change.

22.     Plaintiffs replied that they did not believe personal beliefs needed to change, but Jasmine Deming's requests should be honored.

23.     Ms. Patterson agreed, indicating that, even if she did not believe in something, she could still be respectful.

24.     Plaintiffs left the meeting feeling hopeful and relayed the outcome of the meeting to Jasmine Deming who was relieved to hear about Ms. Patterson's decision.

25.     After reflecting about her agreement and no doubt discussing the transition with her family and others, Ms. Patterson rescinded her agreement.

26.     On or around December 17, 2021, Ms. Patterson told Plaintiffs that she would not support Jasmine Deming's transition or refer to her using a different name or male pronouns.

27.     Ms. Patterson emphasized that all of Defendant's employees should refer to Jasmine Deming as "Jasmine," not the name "Rain," and use female pronouns because that was the gender Jasmine Deming presented when she was hired by Defendant.

28.     Although Jasmine Deming intended when she was hired to pursue a transition, she was not asked about that and did not disclose her intent because another employer had refused to hire her when she had disclosed that intent.

29.     Plaintiffs told Ms. Patterson that they were not comfortable referring to Jasmine Deming as "Jasmine" and using female pronouns because Jasmine Deming had requested that they not do so.

30.     Ms. Patterson told Plaintiffs that they should never have agreed to Jasmine Deming's request or offered support for her transition without first checking with Ms. Patterson.

31.     By then, Jasmine Deming's plan to transition was widely known among Defendant's employees, and many if not most, referred to Jasmine Deming as "Rain" and used he/him/his pronouns.

32.     As Ms. Patterson's decision become known, Plaintiffs received several calls, emails, or texts from coworkers expressing their concern about rejecting Jasmine Deming's requests.

33.     On December 18, 2021, Defendant had a Breakfast with Santa event for enrolled children and their parents, and Ms. Patterson, her husband, Plaintiffs, and Jasmine Deming attended.

34.     The way Jasmine Deming appeared indicated to some that she was transitioning, and Ms. Patterson and her husband were observed glaring at Jasmine Deming and being visibly upset or angry.

35.      On the evening of December 19, 2021, Ms. Patterson called Jasmine Deming at home and told her that Defendants' employees and parents of enrolled children would call her "Jasmine"; asked which employees had been calling her "Rain"; and made clear that she did not agree with Jasmine Deming being transgender.

36.     Defendant's work schedule for the week starting December 20, 2021, had been completed and posted showing the name "Rain" for Jasmine Deming, but Ms. Patterson scratched of "Rain" and replaced it with "Jasmine."

37.     Ms. Patterson asked Plaintiffs on December 20, 2021, who created the work schedule and used "Rain" as Jasmine Deming's first name.

38.     Plaintiff Pichè answered that she had done so, and Ms. Patterson expressed her dissatisfaction with what she had done.

39.     Plaintiffs reminded Ms. Patterson that they were not comfortable with rejecting Jasmine Deming's requests.

40.     Ms. Patterson told them that they could either change the name on the schedule from male to female or be "escorted out the door" by security.

41.     Ms. Patterson had been joined by her husband when she made that threat.

42.     Plaintiff Pichè asked whether they were being terminated or just being asked to leave for the day.

43.     Ms. Patterson replied by shouting "make your choice, change it or leave" or used words to that effect.

44.     Ms. Diaz replied that her position would not change and asked what would happen if it did not.

45.     Ms. Patterson said that she did not know and reiterated that she would call security if they did not immediately leave, telling plaintiffs to go home and think about their position and support of Jasmine Deming's transition.

46.     Plaintiffs left the building at approximately 9:30 a.m., intending to return to work the following day, Tuesday, December 21, 2021.

47.     Throughout the rest of Monday Plaintiffs received emails and text messages from Defendant's employees about the way Jasmine Deming was being treated.

48.     Early that evening Ms. Diaz tried to access her work email, but the password had been changed and she could not access it.

49.     Around 8:00 p.m., Plaintiffs received a text message from Ms. Patterson advising them to check their personal email.

50.     Upon doing so, Plaintiffs found an email from Ms. Patterson stating that they were being terminated as of that day for behavior that was "insubordinate, disrespectful and disruptive."

51.     At no time did Ms. Patterson instruct Defendant's employees that transitioning involved a medical matter which should not be discussed in public or changing to a male name and using male pronouns had to await changing registration of employees with the State of Ohio.

52.     At no time did Plaintiffs organize Defendant's employees to disobey Ms. Patterson and honor Jasmine Deming's name and pronouns requests.

53.     Plaintiffs were aware that several of Defendant's employees felt strongly that Jasmine Deming's name and pronouns requests should be honored and not being so was sex discriminatory and bullying.

54.     Several of Defendant's employees resigned after Plaintiffs were fired and Defendant refused to honor Jasmine Deming's name and pronouns request.

55.     On or around December 31, 2021, Ms. Patterson requested a meeting with Jasmine Deming and surprised her by saying she would honor her name and pronouns request.

56.     At around the same time, Ms. Patterson and Jasmine Deming were contacted by a reporter about what had happened, why so many employees resigned, and whether a lawsuit would be brought.

57.     This was a total change from the conversations we previously had, which was weird.

58.     Terribly distressed by what had happened, Jasmine Deming resigned on January 15, 2022.

59.     Plaintiffs sought unemployment compensation benefits by filing with the Ohio Department of Jobs and Family Services ("ODJFS"), and ODJFS determined that they had been terminated "without just cause" and were eligible for those benefits.

60.     At all times material to this Complaint, Plaintiffs reasonably and sincerely believed that rejecting Jasmine Deming's requests was sex discriminatory – but for her cisgender she would have been called a male name and male pronouns would have been used -- and bullying in a way that would inflict severe emotional distress on an already vulnerable coworker.

61.     Ohio has a clear public policy, enshrined in its common law, that an employer may not intentionally or knowingly, whether actual or constructive knowledge, inflict severe emotional distress on an employee, especially by bullying a vulnerable employee, unless the employer's conduct is privileged.

62.     Defendant was not privileged to bully Jasmine Deming by rejecting her name and preferred pronouns request.

63.     Going through a medical transition is so personal and emotional a matter that rejecting an employee's name and pronouns request is tantamount to using slurs or ridicule to demean the employee.

64.     Defendant knew that rejecting Jasmine Deming's name and preferred pronouns request would force her to resign because being treated that way was so emotionally distressing

and aggravated the feelings Jasmine Deming was having due to the transition itself, converting the workplace into a hostile environment.

65.     Discharging at-will employees who refuse to bully coworkers and thereby inflict severe emotional distress on them jeopardizes the clear Ohio public policy against employers inflicting severe emotional distress.

66.     Defendant forced Plaintiffs to choose between inflicting severe emotional distress on Jasmine Deming and retaining their employment and career opportunities.

67.     Ohio and federal statues do not provide a private cause of action for at-will employees who have suffered a wrongful discharge based on refusing to bully coworkers and thereby inflicting severe emotional distress on them, and at-will employees who have been terminated in a way that jeopardizes Ohio's clear public policy lack any right to bring a civil action for such discharge, to seek recourse for the harm caused by such discharge, including loss of pay and job, tainting an employment record, and emotional distress, or to secure punitive damages to deter employers from jeopardizing that public policy.

68.     Defendant lacked any overriding business justification for discharging Plaintiffs because they performed their job duties in exemplary fashion and had an unblemished disciplinary record and insisting on using female names and pronouns for transgender employees significantly risks inflicting a hostile environment on them in violation of antidiscrimination laws as well as inflicting severe emotional distress on those vulnerable during medical transitioning.

69.     Defendant's violation of Ohio's public policy was committed in conscious disregard toward Plaintiffs' right to remain free from wrongful discharge, even though its conduct had a great probability of causing them economic and emotional hardship and did cause such harm.

10

70.     But for Plaintiffs' protected activity of opposing sex discrimination, they would not have been terminated.

71.     Defendant's retaliation against Plaintiffs was committed in reckless disregard of their rights and with conscious disregard toward their right to remain free from retaliation, even though its conduct had a great probability of causing them economic and emotional hardship and did cause such harm.

72.     As a direct and proximate result of Defendant's termination of Plaintiffs, they suffered and continue to suffer economic damages in the form of lost salary and fringe benefits and impairment of their career development even though they have made reasonably diligent efforts to secure comparable employment.

73.     As a direct and proximate result of Defendant's pretextual termination of Plaintiffs, they suffered and continue to suffer emotional distress, humiliation, and frustration.

## V.     Claims

### A.     Count I: Violation of Title VII

74.     Paragraphs 1 through 73 are incorporated herein as if fully set forth.

75.     By terminating Plaintiffs for opposing in a responsible and non-disruptive manner the sex discriminatory attitude of Defendant and its manifestations, which they reasonably and sincerely believed were sex discriminatory, Defendant has committed retaliation in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*.

### B.     Count II: Violation of Ohio Laws Against Discrimination

76.     Paragraphs 1 through 73 are incorporated herein as if fully set forth.

77.     By terminating Plaintiffs for opposing in a responsible and non-disruptive manner the sex discriminatory attitude of Defendant and its manifestations, which they reasonably and

sincerely believed were sex discriminatory, Defendant has committed retaliation in violation of the Ohio Laws Against Discrimination.

**C.      Count III: Wrongful Discharge in Violation of Ohio Public Policy**

78.      Paragraphs 1 through 73 are incorporated herein as if fully set forth.

79.      By terminating Plaintiffs because they refused to bully a transitioning and vulnerable coworker and thereby inflict severe emotional distress on the coworker, Defendant committed a wrongful discharge in violation of clear Ohio public policy.

**VI .     Prayer for Relief**

WHEREFORE, Plaintiffs are entitled to and pray for the following relief:

A.      a declaration that Defendant has violated Title VII, the Ohio Laws Against Discrimination, and Ohio common law;

B.      equitable relief of reinstatement with expungement of the alleged misconduct, suspension, and termination, from their personnel file;

C.      wages, salary, employment benefits, and other compensation denied or lost to them because of Defendant's violations;

D.      compensatory and punitive damages in an amount exceeding $75,000;

E.      pre-judgment and post-judgment interest:

F.      costs and attorneys' fees; and

G.      such other relief as the Court deems fair and equitable.


                              Respectfully submitted,

                                        By: */s/ Helen M. Robinson*
                                        Helen M. Robinson (0097070)
                                        (*hrobinson@marshallforman.com*)


12

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
Madeline J. Rettig (0098816)
(*mrettig@marshallforman.com*)
Marshall, Forman And Schlein, LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

By: */s/ Helen M. Robinson*
Helen M. Robinson (0097070)